**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**



FILED
CLERK, U.S. DISTRICT COURT
11/06/2025
CENTRAL DISTRICT OF CALIFORNIA
BY_____asi_____DEPUTY
DOCUMENT SUBMITTED THROUGH THE
ELECTRONIC DOCUMENT SUBMISSION SYSTEM

**DIPESH SINGLA**, on behalf of himself and all others similarly situated,

(dipeshsingla668@gmail.com, +17734571046)

Plaintiff,

v.

**MICROSOFT CORPORATION; LINKEDIN CORPORATION; WORKDAY, INC.; ORACLE HCM CLOUD; ADP WORKFORCE NOW; PAYCHEX FLEX; UKG PRO; DAYFORCE; ICMIS; GREENHOUSE; JOBVITE; LEVER; SMART RECRUITER; GUSTO; RIPPLING; PAYCOR; BAMBOOHR; MICROSOFT CAREERS; APPLE CAREERS;  GLASSDOOR, INC.; INDEED, INC.; GOOGLE JOBS; GOOGLE CAREERS; ZIPRECRUITER; CAREER BUILDER; DICE; FLEXJOBS; USAJOBS; NEXXT; ASHBY HQ; MONSTER WORLDWIDE, INC.; SIMPLY HIRED, INC.; SNAGAJOBS; CRAIGSLIST; UPWORK; HANDSHAKE; THE LADDER; THE MUSE; IDEALIST; HIRED; WELLFOUND; LINKUP; REMOTE.CO; SCOUTED; MEDIABISTRO; COOL WORKS; ARC AND DOES 1–100, INCLUSIVE**,

Defendants.

**Case No.:**   2:25-cv-10660-JWH-E

**Hon'ble Judge**: TBA

**CLASS ACTION COMPLAINT FOR: (Not limited to):**

Employment Discrimination (Title VII, ADA, ADEA)

Disparate Impact under the Civil Rights Act

Violation of California Fair Employment and Housing Act (FEHA)

Violation of Equal Protection (42 U.S.C. § 1983)

Unfair Competition Law (Cal. Bus. & Prof. Code § 17200)

Federal Trade Commission Act § 5 Violation (15 U.S.C. § 45)

Privacy Violations (Cal. Const., Art. I, § 1)

Negligence and Gross Negligence

Unjust Enrichment

JURY TRIAL DEMANDED

REQUEST TO PROCEED IN FORMA PAUPERIS

REQUEST FOR APPOINTMENT OF COUNSEL

REQUEST FOR SERVICE BY U.S. MARSHAL

**Note:** All allegations below as per Hon'ble court rules and ethics.

## I. INTRODUCTION

1. Plaintiff Dipesh Singla brings this class action on behalf of plaintiff, and all others similarly situated in USA and Worldwide (if applicable). Plaintiff in his life have done some research, publications, internships, studied from top universities (on paper), and volunteered for many organizations, plaintiff was a part once of about 15000 communities including technical and non-technical, online and offline groups and communities, and had run communities as president, and contributed to many in other roles in multiple communities. Further plaintiff did many certifications from Coursera and various other platforms.

   1A. Hon'ble Courts have repeatedly recognized that entities that screen, rank, or refer applicants for employment even if they are not the direct hiring

employer — qualify as "employment agencies" under Title VII and the ADEA.

1B. In *Hill v. Mississippi State Employment Service*, 918 F.2d 1233 (5th Cir. 1990), a state-run job service that screened and referred applicants was held to be an "employment agency" for purposes of Title VII.

1C. In *Kaplowitz v. University of Chicago*, 387 F. Supp. 42 (N.D. Ill. 1974), a university's placement office was deemed an "employment agency" because it matched students with prospective employers.

1D. In *Dumas v. Town of Mount Vernon*, 612 F.2d 974 (5th Cir. 1980), a municipal entity that administered pre-employment tests was found to be functioning as an employment agency and subject to Title VII liability.

1E. In *Scaglione v. Chappaqua Central School District*, 209 F. Supp. 2d 311 (S.D.N.Y. 2002), maintaining an "eligible list" from which hiring decisions were made constituted an employment agency function.

1F. Defendants here, by operating AI-driven applicant tracking systems that rank, score, and reject candidates for third-party employers, perform the same gatekeeping role and are therefore subject to Title VII and ADEA obligations.

1G. In EEOC v. Papin Enterprises, 2009 WL 961108 (M.D. Fla.), the court held that third-party recruiters and referral services can be liable as "agents" of the employer for discriminatory practices. This reinforces that Defendants, acting in their gatekeeping capacity, are subject to the same civil rights obligations as direct employers.

1H. The EEOC's May 2023 guidance, Assessing Adverse Impact in Software, Algorithms, and Artificial Intelligence Used in Employment Selection Procedures, expressly warns that employers and their vendors may be liable

under Title VII, ADA, and ADEA when AI tools used in hiring create unlawful disparate impact or act as barriers to equal opportunity.

1I. The California Civil Rights Council, in its 2024 proposed regulations under FEHA, emphasized that automated decision-making tools used in hiring are subject to the same anti-discrimination obligations as human decision-makers, and that vendors may be held jointly liable with employers when their tools cause disparate impact.

2. Defendants operate automated, AI-driven, and algorithmic applicant tracking systems ("ATS") that unlawfully reject qualified applicants without human review.

3. These systems perpetuate bias, misuse applicant data, and violate federal and California law.

4. Discrimination alleged includes disparate treatment and disparate impact based on race, national origin, disability, gender, and age.

5. Plaintiff further alleges Defendants profit from misuse of applicant data and facilitates scam solicitations, causing economic and reputational harm.

6. The Equal Employment Opportunity Commission ("EEOC"), in its amicus curiae brief filed in Mobley v. Workday, Inc., N.D. Cal. Case No. 3:23-cv-00770, has expressly taken the position that AI-driven hiring platforms such as those operated and deployed by Defendants are covered by Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), and the Age Discrimination in Employment Act (ADEA) as "employment agencies," "indirect employers," and **"agents"** of employers.

7.  The EEOC emphasized that where such systems procure employees by screening, ranking, and rejecting applicants, they are bound by the same civil rights obligations as traditional employers and employment agencies.

## II. JURISDICTION AND VENUE

8.  This Court has jurisdiction under 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1343 (civil rights), 28 U.S.C. § 1367 (supplemental jurisdiction), and 28 U.S.C. § 1332(d) (Class Action Fairness Act).

8A. Jurisdiction is also proper under 28 U.S.C. § 1337 because this action arises in part under federal laws regulating commerce and protecting against unfair competition, including the Federal Trade Commission Act, 15 U.S.C. § 45, and California Business & Professions Code § 17500, which involve trade regulation and commerce.

8B. The proposed class includes U.S.-based and non-U.S.-based applicants whose employment opportunities in the United States were impacted by Defendants' systems. Defendants' AI-driven hiring tools operate globally, affect hiring for U.S.-based positions, and process data and applications submitted from abroad for jobs located in the United States. Courts have recognized that such claims may proceed when the discriminatory effects occur within the United States or involve employment in the U.S., regardless of the applicant's location.

8C. In EEOC v. Arabian American Oil Co., 499 U.S. 244 (1991), the Supreme Court recognized limits on extraterritorial application of Title VII, but courts have allowed claims when the alleged discrimination affects access to U.S.-based employment, even for non-U.S. residents. Here, all challenged conduct concerns positions located in the United States, using systems deployed in and targeting U.S. hiring.

9. Venue is proper under 28 U.S.C. § 1391(b) because Defendants conduct substantial business in this District, maintain offices here, and the alleged practices have significant effects within this District.

## III. PARTIES

10. Plaintiff Dipesh Singla who resided in Chicago during time as a student at University of Chicago, Illinois and is currently outside the U.S.

11. Defendants are corporations operating globally, including in California, and either design, operate, or utilize AI-driven ATS.

12. Plaintiff includes DOES 1–100 as unknown defendants to be identified during discovery.

## IV. FACTUAL ALLEGATIONS

13. Plaintiff has applied to thousands of jobs through Defendants' platforms, sometimes for every available position within large companies, including around or over 2,000 positions at the University of Chicago Workday, and many more jobs on workday platforms of multiple companies.

14. In nearly all cases, Plaintiff received immediate or mass rejection notices sometimes for dozens or hundreds of applications within seconds strongly indicating automated screening without human review.

15. Defendants' AI tools, including Workday's "Candidate Skills Match" and similar scoring systems, rank, score, and reject applicants using biased training data that reflect historical employer preferences, disproportionately harming minority, disabled, and older candidates.

15A. In numerous instances, Plaintiff received simultaneous rejection notices for dozens or hundreds of roles within seconds of application submission, including timestamps indicating identical decision times, thereby evidencing that no substantive human review occurred.

15B. Plaintiff alleges upon information and belief that Defendants, in collaboration with certain employer clients such as the University of Chicago, and many more employers coordinated to preclude interviews for qualified candidates, constituting collusion in discriminatory hiring practices. As one example of such collusion, Plaintiff observed instances where plaintiff submitted applications to different companies within the same hour and received identical rejection responses  both in wording and timestamp  from each, suggesting that the applications were processed through a shared AI screening infrastructure or coordinated rejection system. In other instances, postings for identical roles appeared across multiple Defendants' platforms with the same rejection pattern, further indicating centralized or coordinated screening. The shared timing and identical rejection formats suggest that Defendants' systems either share applicant data in real time or use a common vendor database to flag and exclude certain applicants across multiple employers. This pooling of rejection data increases the likelihood of industry-wide blacklisting without due process.

**16.** Plaintiff alleges these systems also collect personal data without consent, share it with third parties, and lead to scam job solicitations. Defendants' conduct also infringes upon Plaintiff's and class members' liberty interest in pursuing a lawful occupation, a right recognized as fundamental under the Due Process Clauses (Greene v. McElroy, 360

U.S. 474 (1959); Conn v. Gabbert, 526 U.S. 286 (1999)), by erecting unjustified algorithmic barriers to participation in the labor market.

**16A.** Plaintiff alleges that Defendants' collection of Equal Employment Opportunity (EEO) data prior to substantive review enables unlawful discrimination by allowing employers or AI algorithms to filter or deprioritize applicants based on protected characteristics, in violation of federal and state law.

**16B.** Plaintiff alleges that upon providing an email address to one job platform, he received unsolicited recruitment emails from unrelated platforms, evidencing unauthorized data sharing and/or sale of personal information in violation of privacy laws.

**16C.** In In re Facebook, Inc. Consumer Privacy User Profile Litig., 402 F. Supp. 3d 767 (N.D. Cal. 2019), unauthorized sharing of user data with third parties without adequate consent was held actionable under privacy and consumer protection laws. Defendants' conduct here is analogous, involving unauthorized transmission of job applicants' personal and demographic information.

**17.** Plaintiff has experienced direct harm from such misuse.

17A. On some occasions, Plaintiff observed that positions that were filled by individuals demonstrably less qualified, including candidates who lacked basic technical competencies, indicating that merit-based criteria were not applied consistently.

17B. Many of the positions at issue are generalist roles requiring skills that Plaintiff possesses; the systematic exclusion of Plaintiff from even consideration for such roles supports an inference of bias and/or unfair exclusionary practices.

17C. As a result of Defendants' practices, Plaintiff has suffered economic harm in the form of lost wages and benefits from positions for which he was qualified, as well as non-economic harm including emotional distress, reputational damage, and loss of professional opportunities. Based on market salary data for positions applied to, Plaintiff estimates the aggregate lost income opportunity to exceed $"To be determined" annually.

18. The Equal Employment Opportunity Commission and probably hon'ble federal courts, including in *Mobley v. Workday*, have recognized that such AI systems may constitute "employment agencies" under federal law, making them subject to anti-discrimination statutes.

19. Brush v. San Francisco Newspaper Printing Co. (N.D. Cal. 1970), aff'd, 469 F.2d 89 – defines employment agency functions, supports claim that screening & referral = employment agency conduct.

20. Hill v. Mississippi State Employment Service (5th Cir. 1990) – state entity was an employment agency due to matching and screening applicants.

21. Kaplowitz v. University of Chicago (N.D. Ill. 1974) – school placement office qualified as employment agency due to referral role.

22. Dumas v. Town of Mount Vernon (5th Cir. 1980) – administering pre-employment tests is part of employment agency function.

23. Scaglione v. Chappaqua Central School District – maintaining an "eligible list" for hiring = employment agency.

24. Sibley Memorial Hospital v. Wilson (D.C. Cir. 1973) – indirect employer liability.

**25.** Ass'n of Mexican-American Educators v. State of California (9th Cir. 2000) – indirect control over employment opportunities triggers Title VII liability.

**26.** Pauline T. Kim, Manipulating Opportunity – academic authority supporting the idea that AI hiring tools function as employment agencies.

**27.** In Mobley, the plaintiffs alleged, and the court accepted for purposes of conditional certification, that Workday's AI systems could reject hundreds of applications within seconds of submission, often in the middle of the night, without any human review.

**28.** These systems allegedly used "Candidate Skills Match" scoring, keyword analysis, and other algorithmic ranking tools that reduced candidates to numerical scores such as "strong," "good," "fair," or "low."

**29.** Plaintiff's experience mirrors the Mobley plaintiffs' accounts — mass automated rejections of multiple roles applied for within a single employer, sometimes 50 to 100 positions rejected at precisely the same timestamp.

**30.** The absence of individualized review deprives applicants of meaningful consideration, effectively closing the door to employment opportunities in violation of federal and state anti-discrimination laws.

30A. Defendants' misuse of applicant data has facilitated scam solicitations, phishing schemes, and spam job postings, further harming Plaintiff and the class economically and reputationally.

30B. Plaintiff further alleges that Defendants' AI-driven systems lack safeguards to prevent retaliation against applicants who have engaged in protected activity, including whistleblowing, as identified by organizations such as the Electronic Privacy

Information Center (EPIC) and AI Now Institute. (https://epic.org/issues/ai/,
https://ainowinstitute.org/wp-content/uploads/2023/04/AI_Now_2019_Report.pdf )

## V. CLASS ACTION ALLEGATIONS

**31.** Plaintiff seeks certification of a class consisting of all individuals who, within the
applicable statute of limitations, applied for jobs through Defendants' AI-driven
platforms and were subject to automated rejection without substantive human review.

**32.** The class is so numerous that joinder of all members is impracticable.

**33.** Common questions include whether Defendants' AI tools cause unlawful disparate
impact, whether their practices violate civil rights and privacy laws, and whether they
engaged in unfair or deceptive conduct.

33A. Plaintiff also believes that Defendants' systems facilitate or conceal
nepotism and favouritism in hiring, whereby individuals with personal or
insider connections receive opportunities while qualified external candidates are
systematically excluded. This is evidenced by Plaintiff's own experience of
applying to thousands of positions without a single full-time offer, while less-
qualified individuals, sometimes lacking even basic job competencies, were
hired.

33A(i). Courts have recognized that nepotism and favouritism, while not
unlawful per se, can perpetuate historical exclusion of protected groups and thus
create a disparate impact in violation of Title VII and FEHA (Thomas v.
Washington County School Board, 915 F.2d 922 (4th Cir. 1990); Barnes v.
Costle, 561 F.2d 983 (D.C. Cir. 1977)). When such preferences are coded into
AI systems, their discriminatory effects are magnified and concealed.

33B. Plaintiff strongly believes in principle, U.S. employment, discrimination, and other relevant laws is designed to protect merit-based hiring by prohibiting decisions based on protected characteristics (race, national origin, gender, disability, age, etc.) and by requiring job-related selection criteria. Courts have allegedly often stated that employment decisions should be based on qualifications relevant to the job but not at the expense of violating anti-discrimination laws.

33C. Griggs v. Duke Power Co., 401 U.S. 424 (1971) – The Supreme Court held that selection procedures must be related to job performance and not have a discriminatory effect unless justified by business necessity. This case essentially says: "Merit is fine, but it must be measured fairly."

33D. Albemarle Paper Co. v. Moody, 422 U.S. 405 (1975) – Reinforced that employment tests and selection procedures must be demonstrably related to job performance.

33E. Ricci v. DeStefano, 557 U.S. 557 (2009) – A city cannot discard test results simply because they lead to an outcome it doesn't like if the test is job-related and fairly administered.

33F. *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977 (1988) held that subjective or discretionary selection criteria are subject to disparate impact analysis under Title VII. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) established the burden-shifting framework for proving intentional discrimination.

33G. The opacity of Defendants' AI systems functions like subjective human discretion in hiring, which the Supreme Court in Watson v. Fort Worth Bank &

Trust, 487 U.S. 977 (1988) found subject to disparate impact analysis. AI models that are not transparent to applicants or regulators create the same risks of hidden bias and arbitrary exclusion.

34. Plaintiff's claims are typical of the class, and Plaintiff will fairly and adequately represent class interests.

35. Courts have recognized that entities other than the direct hiring employer may still be liable under civil rights statutes when they exercise control over access to employment. See Sibley Memorial Hosp. v. Wilson, 488 F.2d 1338 (D.C. Cir. 1973) (hospital liable under Title VII where it controlled which nurses could work for doctors); Ass'n of Mexican-American Educators v. State of California, 231 F.3d 572, 580 (9th Cir. 2000) (en banc) (state liable for discriminatory teacher exam affecting employment eligibility); Brush v. San Francisco Newspaper Printing Co., 469 F.2d 89 (9th Cir. 1972) (employment referral entity liable under Title VII).

36. As in those cases, Defendants here control who is even considered for employment by acting as gatekeepers to the hiring process.

## VI. CAUSES OF ACTION

37. **Count 1 – Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e)** –

    **37.1.1** . Discrimination based on race, color, religion, sex, and national origin. Defendants' AI-driven hiring systems have caused disparate impact and/or disparate treatment based on race, color, religion, sex, and national origin.

    **37.1.2** . The EEOC has recognized, and multiple courts have held, that screening and referral systems including automated applicant tracking

platforms — qualify as "employment agencies" or "agents" for purposes of Title VII.

**37.1.3** . Hill v. Mississippi State Employment Service, 918 F.2d 1233 (5th Cir. 1990), held that a state job service screening applicants was an "employment agency" subject to Title VII.

**37.1.4** . Kaplowitz v. University of Chicago, 387 F. Supp. 42 (N.D. Ill. 1974), recognized that a placement office matching applicants with employers acted as an "employment agency."

**37.1.5** . Dumas v. Town of Mount Vernon, 612 F.2d 974 (5th Cir. 1980), found that a municipal body administering employment testing was liable under Title VII.

**37.1.6** . Scaglione v. Chappaqua Central School District, 209 F. Supp. 2d 311 (S.D.N.Y. 2002), held that maintaining an eligibility list for hiring constituted an employment agency function.

**37.1.7** . Defendants' actions mirror these precedents by controlling access to job opportunities for third-party employers.

38. **Count 2 – Americans with Disabilities Act (42 U.S.C. § 12112)** – Discrimination against qualified individuals with disabilities through screening practices that fail to accommodate.

39. **Count 3 – Age Discrimination in Employment Act (29 U.S.C. § 621 et seq.)** – Disparate impact against applicants aged 40 and older.

40. **Count 4 – California Fair Employment and Housing Act (Gov. Code § 12940 et seq.)** – State-law employment discrimination. Defendants discriminated against applicants within California and failed to ensure fair, non-biased hiring practices.

41. **Count 5 – Equal Protection (42 U.S.C. § 1983)** – Discrimination in conjunction with
    public institutions.

42. **Count 6 – Unfair Competition Law (Cal. Bus. & Prof. Code § 17200)** – Unlawful,
    unfair, and fraudulent business acts. Defendants' platforms employ deceptive user
    interface designs ("dark patterns") that create the false impression of individualized,
    merit-based review, inducing applicants to submit personal data and invest time in
    applications that have no realistic chance of human consideration. This conduct violates
    Section 5 of the FTC Act and California's UCL.

43. **Count 7 – Federal Trade Commission Act § 5 (15 U.S.C. § 45)** – Unfair or deceptive
    practices in commerce. Defendants' platforms employ deceptive user interface designs
    ("dark patterns") that create the false impression of individualized, merit-based
    review(also explicit mention of Equal employment and opportunity), inducing
    applicants to submit personal data and invest time in applications that have no realistic
    chance of human consideration. This conduct violates Section 5 of the FTC Act and
    California's UCL.

44. **Count 8 – Invasion of Privacy (Cal. Const., Art. I, § 1)** – Unauthorized use and
    distribution of personal data. Plaintiff alleges that the personal information misused
    and/or sold/shared by Defendants includes but is not limited to: contact details (email
    address, phone number), Equal Employment Opportunity (EEO) demographic data,
    employment history, education history, browsing behaviour on job platforms, and
    inferred characteristics such as likely ethnicity or age. The unauthorized sharing and
    use of personal and demographic information also constitutes an "unfair or deceptive
    act or practice" under Section 5 of the FTC Act, as such practices misrepresent the
    privacy protections offered to job applicants and cause substantial, unavoidable injury.

45. **Count 9 – Negligence / Gross Negligence** – Failure to ensure fair, accurate, and lawful hiring systems. Defendants owed a duty to design, test, and monitor their algorithmic hiring systems to ensure they did not produce foreseeable discriminatory effects, and/or bias or any illegal, immoral, unethical, acts in hiring. This duty is analogous to the duty of care in product design under California law (Anderson v. Owens-Corning Fiberglas Corp., 53 Cal.3d 987 (1991)), given the foreseeable risk of economic and dignitary harm from flawed AI decision-making.

1. Negligent Misrepresentation – misrepresenting fairness and transparency of hiring processes.

2. Negligent Infliction of Emotional Distress – from discriminatory automated rejections.

3. Intrusion Upon Seclusion – for data collection without consent.

4. Breach of Implied Covenant of Good Faith and Fair Dealing – in application process.

46. **Count 10 – Unjust Enrichment** – Profiting from the labor, time, and data of applicants.

47. **Count 11 –** Civil Rights Act of 1866 (42 U.S.C. § 1981) – protects equal rights to make and enforce contracts, including employment contracts.

48. **Count 12 –** California Unruh Civil Rights Act (Cal. Civ. Code § 51) – prohibits discrimination by all business establishments, including online platforms.

49. **Count 13 –** California Consumer Privacy Act (CCPA) (Cal. Civ. Code § 1798.100 et seq.) – addresses misuse and unauthorized sale/sharing of personal information. Plaintiff further alleges that Defendants knowingly accessed, stored, and processed this personal information without authorization or beyond the scope of any purported

consent, in violation of Cal. Penal Code § 502. Specifically, Defendants' ATS systems accessed, analysed, and transmitted applicant EEO data and behavioural metrics to third parties unrelated to the positions applied for, without the applicants' knowledge or consent.

50. **Count 14 –** California Confidentiality of Medical Information Act (Cal. Civ. Code §§ 56–56.37) – relevant if any health/disability data was processed without consent.

51. **Count 15 –** California Constitution, Article I, §§ 7 & 8 – equal protection and non-discrimination in employment. Defendants allegedly violated the California Constitution's guarantees of equal protection and non-discrimination in employment.

   **51A.** The California Supreme Court has recognized that the California Constitution embodies a strong public policy against arbitrary and invidious discrimination in employment, particularly where such practices undermine equal access to economic opportunity. (See Harris v. City of Santa Monica, 56 Cal.4th 203 (2013); Rojo v. Kliger, 52 Cal.3d 65 (1990)). Defendants' conduct violates this fundamental public policy by using opaque, biased AI systems that act as arbitrary barriers to employment.

52. **Count 16 –** U.S. Constitution – Fifth and Fourteenth Amendments – due process and equal protection clauses.

53. **Count 17 –** Retaliation and Blacklisting via AI Systems – Defendants' systems can be and have been used to retaliate against whistleblowers or individuals with protected histories, including by algorithmically deprioritizing or blacklisting their applications, in violation of 42 U.S.C. § 2000e-3 and analogous state provisions. Courts have recognized retaliation and blacklisting as actionable even after the employment relationship ends or when carried out through third-party systems. Robinson v. Shell Oil Co., 519 U.S. 337 (1997) held that post-employment retaliation is prohibited under

Title VII. Hillig v. Rumsfeld, 381 F.3d 1028 (10th Cir. 2004) recognized that negative job references or systemic exclusion from opportunities may constitute retaliation. These precedents apply equally to algorithmic or AI-driven blacklisting.

54. **Count 18 –** California Labor Code § 1050 – prohibits blacklisting applicants from employment.

55. **Count 19** – California Business & Professions Code § 17500 – false advertising (representing fair hiring while using exclusionary AI).

56. **Count 20** – California Penal Code § 502 – computer data misuse (for unauthorized access/use of personal data by ATS).

57. **Count 21 – California Civil Code § 1798.150** – CCPA private right of action for data breaches/misuse.

58. **Count 22 – Intentional Interference with Prospective Economic Advantage**: Defendants, with knowledge of Plaintiff's applications and qualifications, intentionally and unjustifiably interfered with Plaintiff's prospective employment relationships through discriminatory and biased AI rejections. (Please see Korea Supply Co. v. Lockheed Martin Corp., 29 Cal.4th 1134 (2003)).

59. **Count 23 – Negligent Interference with Prospective Economic Advantage**: Even if not intentional, Defendants breached their duty of care by deploying flawed AI systems that foreseeably and wrongfully blocked qualified applicants from fair consideration, causing measurable economic harm.

## VII. REQUEST TO PROCEED IN FORMA PAUPERIS

60. Plaintiff requests to proceed without prepayment of fees under 28 U.S.C. § 1915.

## VIII. REQUEST FOR APPOINTMENT OF COUNSEL

**61.** Pursuant to 28 U.S.C. § 1915(e)(1), Plaintiff requests appointment of pro bono counsel
due to the complexity of the case, Plaintiff's indigence, and the public interest.

## IX. REQUEST FOR SERVICE BY U.S. MARSHAL

**62.** Plaintiff requests that service of process be carried out by the U.S. Marshal pursuant to
Fed. R. Civ. P. 4(c)(3), due to Plaintiff's inability to bear the cost of service.

## X. PRAYER FOR RELIEF

**63.** Plaintiff                    requests                that             the                  Court:

A. Certify this action as a class action and appoint Plaintiff as representative.

B.       Appoint        counsel       for       Plaintiff       and       the       class.

C. Award compensatory and punitive damages and all other kind of damages to plaintiff
and similarly situated individuals (this may include mental tension and conditions, IIED
arose out specifically because of this matter.

D.       Order      injunctive      relief      to      halt      discriminatory      practices.

E.       Require       independent      audits      of      AI       systems.

F.       Award       attorneys'      fees      and      costs      if      any.

G. Order Defendants to submit their AI-driven applicant tracking systems, algorithms,
and related datasets to an independent audit, in compliance with the EEOC's May 2023
guidance on "Assessing Adverse Impact in Software, Algorithms, and Artificial
Intelligence Used in Employment Selection Procedures," to ensure such systems do not
produce unlawful disparate impact.

H. New way of hiring encouraged complete hiding of any identity element of applicant
including disability, sex, gender, sexuality, caste, creed, race, ethnicity, and name also
so that any kind of identity would not be revealed before, further new protocols for
interview so that natural and induced bias by interviewer, their seniors and companies

can be avoided, further rules on hiring people mandatorily if applied for set number of roles in a company or overall especially in case EEO data is still being taken. Like at least 1 confirmed job per 1000 applications with dignified salary as per any state standards. Further hiring made more easier for international candidates so that nationality discrimination chances should go away. ZDBI Interview format: Zero detail before interview.

I. Requesting for court-mandated anti-retaliation safeguards in AI hiring tools.

J. An order prohibiting retaliation or adverse employment action by Defendants, their agents, or any entities acting in concert with them, against Plaintiff or class members, now and in the future.

K. Transparency in hiring, number of interviewees employers will call, number of hiring that will be done from these applicants, all these too be told before the hiring in the job listing.

L. Banning of automated messages of rejection and telling specifically each application was rejected with or without interview and why other candidate was better than each applicant.

M. Grant such other relief as the Hon'ble Court and Jury deems proper.

## XI. JURY DEMAND

**64.** Plaintiff demands trial by jury on all triable issues.

## XII, ADDITIONAL REFERENCES

**65.  Federal Anti-Discrimination & Civil Rights**

- **Civil Rights Act of 1871 (42 U.S.C. § 1985(3))** – **Conspiracy to deprive civil rights** Could be added to allege Defendants acted in concert (data sharing, coordinated rejections) to deny equal employment opportunity. *Placement:* After Count 11 or Count 17.

- **Bostock v. Clayton County, 590 U.S. ___ (2020)** – Supreme Court held Title VII protects against discrimination based on sexual orientation and gender identity. *Placement:* In Count 1 to reinforce that your claims also protect other covered statuses.

- **Teamsters v. United States, 431 U.S. 324 (1977)** – Recognized that systemic patterns of exclusion, even without overt bias, violate Title VII. *Placement:* Under Class Allegations and Count 1.

**66. Due Process & Liberty to Work**

- **Board of Regents v. Roth, 408 U.S. 564 (1972)** – Discusses due process rights when liberty interests (like employment opportunity) are at stake.

- **Greene v. McElroy, 360 U.S. 474 (1959)** – Recognizes the right to work in one's chosen profession as a liberty interest. *Placement:* In ¶16 (already partially referenced) to show historical protection of "right to pursue a lawful occupation."

**67. State-Level Additions (California)**

- **California Constitution, Article I, § 1** – Protects "pursuing and obtaining safety, happiness, and privacy" — privacy claims can tie to data misuse and ATS profiling.

- **California Labor Code § 970** – Prohibits knowingly making false representations about work (could apply to misleading "equal opportunity" claims). *Placement:* Near Counts 19–21.

- **California Civil Code § 51.5** – Similar to Unruh Act but applies beyond "business establishments," covers all persons engaged in any business activity. *Placement:* Could be added alongside Count 12.

### 68. Torts & Common Law Doctrines

- **Restatement (Second) of Torts § 766B** – Interference with prospective contractual relations (already reflected in Counts 22–23).

- **Fraudulent Concealment** – If Defendants hid the fact that AI decisions were final and no human review existed, that's actionable misrepresentation. *Placement:* Could expand Count 9 or add separate fraud count.

### 70. Blacklisting & Labor Rights

- **National Labor Relations Act (29 U.S.C. § 158)** – Section 8 protects against retaliation for protected activity, including organizing or speaking about discrimination. *Placement:* To bolster Count 17 retaliation claims.

- **California Labor Code § 1053** – Imposes criminal liability for blacklisting. *Placement:* After Count 18.

### 71. Data Privacy & Algorithmic Accountability

- **California Privacy Rights Act (CPRA)** – Expanded CCPA rights, includes right to know if automated decision-making is used. *Placement:* After Count 13.

- **Illinois Artificial Intelligence Video Interview Act (820 ILCS 42/1)** – Not California law, but shows trend in U.S. states regulating AI hiring. *Placement:* In introduction to show nationwide policy movement.

- **New York City Local Law 144 (2023)** – Requires bias audits for AI hiring tools; can be cited to show recognized risk of discrimination.

## 72. Public Policy & Meritocracy

- **Merit Systems Principles (5 U.S.C. § 2301)** – Federal hiring policy that selection be based on ability and knowledge, without prohibited discrimination. *Placement:* Under 33B to show codified merit-based principle in U.S. law.

- **Peters v. Lieuallen, 746 F.2d 1390 (9th Cir. 1984)** – Hiring decisions must be rationally related to job requirements under Equal Protection. *Placement:* Under Count 5 or 16.

---

**Plaintiff,**

**Dipesh Singla**

**Filed As Pro Se ("In The Hon'ble court of UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF CALIFORNIA")**

**Email: Dipeshsingla668@gmail.com**

**Phone: +1 (773) 457-1046**

---

| | | | | | |
|---|---|---|---|---|---|
| ☐ | ☆ | ❯ | **LinkedIn** | **Your application to Reception Administ...** | 08:40 |
| ☐ | ☆ | ❯ | **LinkedIn** | **Your application to Sales and Office Ad...** | 08:40 |
| ☐ | ☆ | ❯ | **LinkedIn** | **Your application to Operations & Admi...** | 08:40 |
| ☐ | ☆ | ❯ | **LinkedIn** | **Your application to Project Coordinato...** | 08:39 |
| ☐ | ☆ | ❯ | **LinkedIn** | **Your application to Project Manager at ...** | 08:38 |
| ☐ | ☆ | ❯ | **LinkedIn** | **Your application to Project Manager at ...** | 08:38 |
| ☐ | ☆ | ❯ | **LinkedIn** | **Your application to INTERNSHIP - Juni...** | 08:38 |
| ☐ | ☆ | ❯ | **LinkedIn** | **Your application to Sales Manager at L...** | 08:36 |
| ☐ | ☆ | ❯ | **LinkedIn** | **Your application to Social Media Accou...** | 08:36 |
| ☐ | ☆ | ❯ | **LinkedIn** | **Your application to Project Manager (L...** | 08:36 |